Enrique Ubarri Casals, demandante y apelado, *v.* Federico Calaf, demandado y apelante.

No. 5510.—*Sometido:* Febrero 18, 1932.   *Resuelto:* Diciembre 21, 1932.

\* Nota:  Véase el prefacio.

*Leopoldo Feliú (Feliú & La Costa,* en el alegato), abogado del ape-
lante; *R. H. Blondet,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del
tribunal.

En abril de 1911 Enrique Ubarri vendió a José Acosta
y López dos fincas por precio alzado. Una de dichas fincas
se componía de 110 cuerdas y lindaba por el norte con Su-
sana García y Quintín García, por el sur con Octavio García
Salgado, por el este con ''el río,'' y por el oeste con el
camino viejo de Caguas. Las otras cuerdas de terreno,
conocidas por Vega Larga, ascendían a 20 y lindaban por el
norte con Susana García, por el este con Ramón Rodríguez
y la sucesión de Ramón Trigo, por el sur con Leonardo Calvo,
y por el oeste con el camino de Caguas. Ambas estaban si-
tuadas en el barrio de Monacillo, municipio de Río Piedras.
En marzo de 1913 Acosta vendió ambas propiedades a
Tiburcio Antuñano, también por precio alzado. En mayo
de 1926 Acosta y Ubarri hicieron constar en una escritura
notarial que una mensura de las dos fincas efectuada con el
objeto de venderlas a Antuñano había revelado que el total
de las mismas era 115 cuerdas solamente, en vez de 130, y
que la venta se efectuaba sujeta a la estipulación de que
Acosta se reservaba el derecho de reclamar y recobrar las
cuerdas restantes tan pronto éstas apareciesen al medirse
las dos parcelas y las colindantes. Acosta entonces vendió
su derecho de acción a Ubarri. En julio del mismo año,
mediante escritura pública, Antuñano reconoció que Acosta
se había reservado el derecho de recobrar de los propietarios
adyacentes la menor cabida revelada por una mensura de
las dos fincas y que el precio de la compraventa se había
reducido de conformidad. Antuñano entonces transfirió el
derecho que pudiera tener respecto a la aludida diferencia
en cabida a Ubarri, como cesionario de Acosta. En octubre

del mismo año Federico Calaf compró a José Ramírez 20 cuerdas de terreno en el barrio Monacillo, Río Piedras, lindantes por el norte con la carretera vieja que conduce de Río Piedras a Caguas y con Susana García, por el sur con Leonardo Calvo y una quebrada sin nombre, por el este con Susana García, y por el oeste con Leonardo Calvo. En la escritura se hace constar que Ramírez había adquirido esta finca en abril de 1926 de los esposos Fernández-Escudero. En octubre de 1928 Ubarri instituyó el presente recurso para recobrar de Calaf 7 cuerdas y 99 céntimos, lindantes al norte con el camino municipal de Río Piedras, al este con finca perteneciente a Federico Calaf, antes a Blanca Fernández, al sur con una quebrada al otro lado de la cual se hallan terrenos pertenecientes a Tiburcio Antuñano, antes a Enrique Ubarri, y al oeste con terrenos de Tiburcio Antuñano, antes de Enrique Ubarri. En un procedimiento preliminar la corte de distrito en abril de 1928 ordenó a Calaf que permitiera a Ubarri que entrara y midiera la finca de aquél.

Ramón Díaz Morales, agrimensor, declaró en el juicio del presente caso que un diseño en papel azul mostrádole por el letrado del demandante era un dibujo de una finca cerca de Río Piedras; que el testigo fué a la finca y la midió; que Pepe Escudero, esposo de Blanca Fernández, indicó los linderos al testigo; que el Sr. Canino, de la Central Vannina, y otro señor cuyo nombre el testigo no recordaba, estaban presentes; que la central era un dueño contiguo por el este; que el plano fué hecho en 1926. Entonces el plano fué admitido como prueba con la objeción del demandado, quien se anotó una excepción. La transcripción taquigráfica no demuestra que en aquel entonces éste fuera marcado para su identificación. Un diseño en papel azul marcado *exhibit* "J" del demandante aparenta ser el plano de una finca perteneciente a Blanca Fernández de Escudero. Los nombres de los dueños de las propiedades contiguas, según aparecen en este plano, son: por el norte y este Susana García, hoy Central Vannina, por el sur y este Leonardo Calvo, hoy

Tiburcio Antuñano. Por el oeste o noroeste, en dirección nordeste, existe un camino que se describe "Camino Viejo de Río Piedras a Caguas." Al sudeste figura una quebrada. El área de la finca aparece ser de 27 cuerdas y 99 céntimos. El plano está fechado enero 31, 1926, y está suscrito por Aniceto Díaz Hernández, agrimensor titulado.

El testigo Díaz Morales también identificó otro plano que. representaba ser una mensura "de la misma finca," hecha por el testigo a instancia de Ubarri en abril 27 de 1928. Este plano también fué admitido como prueba con la objeción del demandado y marcado *exhibit* "K" del demandante. Está titulado "Plano de terrenos radicados en el barrio de Monacillo de la jurisdicción de Río Piedras." Hay una línea recta en dirección sudeste que parte de un punto en el camino al noroeste (aquí se describe como el camino municipal de Río Piedras) hacia otro punto en la quebrada al sur, que forma la parte este del lindero sur. La parte nordeste de esta línea divisoria está marcada 20 cuerdas. La porción al sudeste de esta línea está marcada 7 cuerdas y 99 céntimos. En la parte inferior hay un certificado que lee en parte como sigue: "A solicitud de don Enrique Ubarri medí en el barrio de Monacillo de la jurisdicción de Río Piedras un predio de terreno compuesto de . . . . veinte y siete cuerdas con noventa y nueve céntimos de otra, la cual dividí en dos parcelas, una de veinte cuerdas y la otra de siete cuerdas con noventa y nueve céntimos de otra . . . Según se muestra en el plano que se acompaña. Trujillo Alto, P. R., abril 27, 1928. Ramón Díaz Morales, agrimensor."

Ubarri declaró que él instó procedimiento de deslinde; que la corte ordenó se hiciera una mensura de las 20 cuerdas pertenecientes a Federico Calaf, que el testigo comisionó a Ramón Díaz para que hiciera la mensura; que el testigo se hallaba presente; que el Sr. La Costa también estaba presente como representante de Federico Calaf; que la mensura se hizo después que la corte dictó la orden en 1928; que el testigo había ordenado previamente que se hiciera una men-

sura de las 117 cuerdas y había comisionado para ello a Luis Vilá; que el testigo estaba presente y que Antuñano fué notificado.

Luis Vilá Andino identificó otro diseño en papel azul como el plano de una finca que anteriormente pertenecía a Ubarri y que él había medido a instancia de éste; que no hubo oposición; que un mayordomo de la finca contigua a la de Ubarri por el norte se hallaba presente como representante de Calaf y no se opuso; y que el testigo no recuerda quién más estaba presente. Entonces se admitió como prueba el diseño en papel azul con la objeción del demandado y se marcó *exhibit* ''L.'' El certificado del agrimensor hace referencia a la propiedad como perteneciente a Enrique Ubarri, en el barrio de Monacillo, municipio de Río Piedras. Se da el área como de 117 cuerdas y 68 céntimos y se hace referencia a 15 cuerdas como vendidas a José Manuel Acosta. Una porción de la finca cerca del lindero este está marcada Vega Larga. No existe línea divisoria entre la porción así marcada y el resto de la finca. La totalidad de la finca parece lindar por el norte y sur con F. Calaf, por el este con el río Piedras, y por el oeste con ''el camino viejo de Río Piedras.'' Al lado de este camino hay una flecha apuntando al sur, o sea, hacia Caguas. La mitad o más del lindero sur, partiendo desde el río Piedras, está marcada por lo que se designa como un caño. Como ¾ partes del lindero norte también están designadas por una quebrada que se dice no tener nombre y que corre en dirección este hacia el río Piedras. La ¼ parte restante del lindero norte está designada por una línea recta que corre en dirección sudeste desde un punto en el camino viejo de Río Piedras a otro punto en la quebrada.

Podría admitirse para los fines de la argumentación que la parcela de terreno vendida a Federico Calaf en octubre de 1926 por Ramírez, que se dice fué adquirida por éste en abril del año anterior de los ''esposos Fernández-Escudero,'' es la misma parcela medida por Aniceto Díaz Hernández

en 31 de enero de 1926 como perteneciente a doña Blanca Fernández de Escudero. Podría admitirse también que los tres planos eran admisibles sin investigación, explicación e identificación adicionales. Podría admitirse igualmente que, cuanto aparece de ellos, tiene la presunción de ser correcto. No se desprende que el demandante tenga derecho a recobrar del demandado las 7 cuerdas y 99 céntimos descritas en la demanda.

Incumbía al demandante establecer su título a las 7 cuerdas y 99 céntimos en controversia. De obtener sentencia a su favor, debe ser a base de su propio título. Él no puede descansar en el hecho de que el demandado estuviese en posesión de unas cuantas cuerdas en exceso del área especificada en sus escrituras.

El demandante estaba, desde luego, implícitamente en posesión de todos los terrenos que estaban incluídos dentro de los linderos especificados en sus títulos. Las dos fincas que anteriormente le pertenecían y que luego fueron vendidas por él, se describen en las escrituras como que lindan por el norte y sur con propietarios contiguos. Las 7 cuerdas 99 céntimos que se hallan al norte de un punto de que no se hace mención en los planos o en alguna otra parte de ningún lindero natural, no se demuestra que están o que jamás hayan estado dentro de los límites indicados por los títulos del demandante. No hubo prueba satisfactoria de la posesión anterior del demandante, ora sea implícita o en alguna otra forma, de estas 7 cuerdas y 99 céntimos.

Los tres planos no establecen el título del demandante a las 7 cuerdas y 99 céntimos. El agrimensor que midió la finca del demandado y (trazando una línea desde un punto que está en el camino al oeste a otro punto en la quebrada al sur) dividió la finca en dos parcelas, una de 20 y otra de 7 cuerdas y 99 céntimos, no fué nombrado por la corte. Mucho menos era él un árbitro investido de autoridad para establecer los verdaderos linderos entre las propiedades del demandante y demandado. El no rindió informe de su tra-

bajo a la corte. Durante el juicio no explicó cómo realizó su trabajo ni por qué la línea divisoria fué trazada según aparecía en el plano. La única razón que revelan los autos para tratar de segregar la porción de la finca en poder del demandado es que éste estaba en posesión de 27 cuerdas y 99 céntimos mientras que sus títulos mencionaban solamente 20 cuerdas, y el demandante era dueño de 117 cuerdas y 68 céntimos solamente de conformidad con dos escrituras correspondientes a dos fincas distintas cuya cabida total era de 130 cuerdas. Nada hay que revele que las dos parcelas pertenecientes al demandante fueran medidas separadamente. Juzgando por lo que de los autos aparece, la menor cabida de la finca del demandante pudo haber ocurrido en la finca de 110 cuerdas. No se demuestra satisfactoriamente que la cabida de la finca de 20 cuerdas del demandante fuese incompleta. Sin embargo, las 7 cuerdas y 99 céntimos que el demandante trata de recobrar del demandado se hallan al norte de las 20 cuerdas del demandante. De permitirse que subsista la sentencia en favor del demandante, ella privaría al demandado de varias cuerdas de terreno y anexaría las mismas a una parcela contigua perteneciente al demandante, cuya área puede o no estar ya completa, en la teoría de que el dueño de un número de parcelas contiguas demostrando simplemente menor cabida en el área total, puede recobrar de cualquier propietario contiguo hasta el total de la menor cabida de cualquier exceso de que esté en posesión tal propietario contiguo sobre el número de cuerdas especificado en sus escrituras. No hemos pasado por alto el hecho ya mencionado de que el agrimensor que hizo el plano de la finca del demandante situó las 20 cuerdas conocidas con el nombre de Vega Larga al este, contiguas al río Piedras. El mismo agrimensor, repetimos de paso, hace referencia en su certificado al calce del plano, a una venta efectuada por Ubarri a Acosta de 15 de las 117 cuerdas medidas que se decía estaban contenidas dentro de los límites del plano. No hay ninguna otra prueba de tal venta ni hubo explicación

alguna durante el juicio respecto a por qué Vega Larga fué marcada en el plano como parte de la porción oriental de las 117 cuerdas. Las escrituras del demandante, por otra parte, según ya hemos demostrado, describen la parcela de 20 cuerdas como que linda por el este con Ramón Rodríguez y con la sucesión de Ramón Trigo, y por el oeste con el camino de Caguas. También describe las 110 cuerdas como que lindan por el este con el río y por el oeste con el camino viejo de Caguas. De suerte que ambas fincas aparecen como que lindan por el oeste con el camino de Caguas y por el norte (las 20 cuerdas en su totalidad y las 110 cuerdas en parte) con Susana García. Una de ellas solamente, o sea, la de 110 cuerdas, linda por el este con el río. De ahí la conclusión a que llegamos más arriba de que las 7 cuerdas y 99 céntimos en controversia lindan con la parcela de 20 cuerdas del demandante por el norte.

*Debe revocarse la sentencia apelada y declararse sin lugar la demanda.*

El Juez Asociado Señor Córdova Dávila no intervino.